1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

7

HUGO GIL CANDIDO-BOLANOS,

8

Plaintiff,

9

v.

10

JOHN MATTOS, *et al.*

11

Defendants.

12

Case No. 2:25-cv-01359-RFB-EJY

**ORDER**

13

Before the Court is Petitioner Hugo Gil Candido Bolanos's Motion for a Temporary

14

Restraining Order (ECF No. 25). For the following reasons, the Court grants the motion in order

15

to maintain the status quo.

16

17

**I.    BACKGROUND**

18

On September 17, 2025, the Court ordered Mr. Mattos, Mr. Lyons, and Ms. Noem

19

(collectively, the "Government") to indicate what, if any, procedures are being afforded to Mr.

20

Candido Bolanos so that he may challenge his removal to Mexico—i.e., an undesignated third

21

country. See ECF No. 20.

22

On September 19, 2025, the Government advised the Court that Mr. Candido Bolanos was

23

referred to United States Citizenship and Immigration Services ("USCIS") for a credible fear

24

screening. See ECF No. 22. USCIS determined that he failed to establish a reasonable fear of

25

removal to Mexico during the screening process. See ECF No. 24-1.

26

On September 25, 2025, Mr. Candido Bolanos filed a Motion for a Temporary Restraining

27

Order because the Government intends to remove him to Mexico on or after September 27, 2025.

28

See ECF No. 25. He asks the Court to stay his removal pending the resolution of his motion to

1    reopen removal proceedings before the Executive Office of Immigration Review. See id.

2

3    **II.    LEGAL STANDARD**

4         Generally, a party seeking injunctive relief must show: (1) that he is likely to succeed on

5    the merits; (2) that he is likely to suffer irreparable harm without the injunction; (3) that the balance

6    of equities tips in his favor; and (4) that an injunction is in the public interest. See Winter v. Nat.

7    Res. Defense Council, 555 U.S. 7, 20 (2008). Temporary restraining orders are subject to this same

8    legal standard. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th

9    Cir. 2001). The Ninth Circuit recognizes a "sliding scale" variant of the Winter standard, where a

10    strong showing of one factor can offset a weaker showing of another factor. See All. for the Wild

11    Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

12         Accordingly, a court may grant a temporary restraining order in favor of a party that shows

13    that: (1) there are "serious questions going to the merits;" (2) the balance of hardships tips sharply

14    in their favor; and (3) the last two Winter factors are met. See Fraihat v. U.S. Immigr. and Customs

15    Enf't, 16 F.4th 613, 635 (9th Cir. 2021). A "serious question" is one on which the movant "has a

16    fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d

17    1415, 1421 (9th Cir. 1984).

18

19    **III.    DISCUSSION**

20         Based on the limited record before the Court, the Court finds that Petitioner is entitled to a

21    temporary restraining order at this time.

22         **A. There Are Serious Questions Going to the Merits of Petitioner's Due Process**

23              **Claim**

24         Initially, the Court finds that there are serious questions going to the merits of Petitioner's

25    procedural due process claim. Petitioner argues that he is entitled to a hearing before an

26    immigration judge before the Government can remove him to Mexico—i.e., an undesignated third

27    country. The Fifth Amendment imposes procedural "constraints on governmental decisions which

28    deprive individuals of 'liberty' or 'property' interests." Mathews v. Eldridge, 424 U.S. 319, 332

- 2 -

(1976). The specific demands of due process are flexible. <u>See</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972). The Court determines them by considering three distinct factors: (a.) the Government's impact on the private interest at stake; (b.) the risk of an erroneous deprivation with current and proposed procedures; and (c.) the Government's interest in financial and administrative efficiency. <u>See</u> <u>Mathews</u>, 424 U.S. at 334. Based on these factors, Petitioner has a fair chance of success on the merits.

First, Petitioner has a longstanding statutory right to *non-refoulment*—which includes his right not to be returned to a country in which he will be tortured. <u>See</u> 8 U.S.C. § 1231(b)(3); <u>see also</u> <u>Trinidad y Garcia v. Thomas</u>, 683 F.3d 952, 956 (9th Cir. 2012) ("The [Convention Against Torture] and its implementing regulations . . . generate interests cognizable as liberty interests under the Due Process Clause.") (citations omitted). Deportation necessarily swallows this private interest, as a noncitizen who is sent beyond the United States cannot invoke it.

Second, Petitioner's proposed procedure would likely reduce the risk of his erroneous deportation in violation of the Convention Against Torture. As of now, Petitioner's claim for deferral of removal has only been screened by USCIS. An additional, factual hearing before an immigration judge would "reduce the risk that [his potentially] meritorious claim[ ] [was] erroneously rejected at the screening stage." <u>Orozco-Lopez v. Garland</u>, 11 F.4th 764, 772 (9th Cir. 2021) (citation omitted). Moreover, the Court finds that there is an increased risk of erroneous deportation where, as here, the agency has acted on an extremely expedited basis to remove a noncitizen to a previously undesignated country. <u>Cf.</u> <u>Andriasian v. I.N.S.</u>, 180 F.3d 1033, 1041 (9th Cir. 1999).

Third, at this juncture, the Court finds that there is not a substantial burden placed on the government in terms of administration or cost. The procedure proposed by Petitioner parallels the government's own standard practice. <u>Cf.</u> 8 C.F.R. § 208.16 (2022).

The Court thus concludes that there are serious questions going to the merits of Petitioner's claim, as most of the procedural due process analysis seems to weigh in his favor.

**B.  Petitioner is Likely to Suffer Irreparable Harm Without Injunctive Relief**

Next, the Court finds that Petitioner is likely to suffer irreparable harm without injunctive

relief. In the absence of a temporary restraining order, Petitioner will be removed to Mexico immediately. Consequently, he would not be able to vindicate his statutory and constitutional rights. He would be separated from his family in the United States. And, most importantly, he would be subject to *torture* based upon his allegations. See Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.") (citation and internal quotation marks omitted); Leiva-Perez v. Holder, 640 F.3d 962, 969–70 (9th Cir. 2011) (identifying physical danger and family separation as indicia of irreparable harm) (citations omitted).

### C.  The Balance of Hardships Tips Sharply in Petitioner's Favor

Additionally, the Court finds that the balance of hardships tips sharply in Petitioner's favor. In the absence of a temporary restraining order, Petitioner is likely to suffer irreparable harm by being removed to Mexico and being subject to persecution and torture there. See supra Part B. Meanwhile, a temporary restraining order simply prevents the Government from effectuating his removal for a maximum of two weeks. On balance, Petitioner clearly has more to lose in the context of injunctive relief.

### D.  A Temporary Restraining Order is in the Public Interest

Finally, the Court finds that a temporary restraining order staying Petitioner's removal is in the public interest. "Of course[,] there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." Nken v. Holder, 556 U.S. 418, 436 (2009); Leiva-Perez, 640 F.3d at 970. Petitioner is asserting a fear-based claim against his removal to Mexico, and a temporary restraining order would promote the full adjudication of his claim by all Parties.

While this Court cannot automatically discount the Government's interest in the "prompt execution of removal orders," Nken, 556 U.S. at 436, the Court finds that it is not implicated here. Simply put, there is nothing prompt about the execution of Petitioner's final order of removal, as it was issued nearly 17 years ago. See ECF No. 6-1.

IV.    **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Mr. Candido Bolanos's Motion for a Temporary Restraining Order (ECF No. 25) is **GRANTED**. The Government is hereby restrained from removing Petitioner from the United States District of Nevada until **October 9, 2025.**

**IT IS FURTHER ORDERED** that the Government file a response to Petitioner's Motion for a Preliminary Injunction (ECF No. 25) by **October 1, 2025**. Alongside its response, the Government must provide all records relating to Mr. Candido Bolanos's eligibility screening for deferral of removal to Mexico.

**IT IS FURTHER ORDERED** that Petitioner must file his reply by **October 3, 2025**.

**IT IS FURTHER ORDERED** that the Parties appear for a hearing on Petitioner's Motion for a Preliminary Injunction (ECF No. 25) on **October 7, 2025**, **at 2 P.M.** in Courtroom 7C of the Lloyd D. George U.S. Courthouse, located at 333 S. Las Vegas Boulevard, Las Vegas, NV 89101.

**DATED:** September 25, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**