UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HUGO GIL CANDIDO-BOLANOS, | Case No. 2:25-cv-01359-RFB-EJY |
| Petitioner, | **ORDER** |
| v. | |
| TODD M. LYONS, *et al.*, | |
| Respondents. | |

Before the Court is Petitioner Hugo Gil Candido Bolanos's Motion for Preliminary Injunction (ECF No. 25). For the following reasons, the Court grants Petitioner's motion.

**I.   BACKGROUND**

On July 25, 2025, Mr. Candido Bolanos filed a petition for a writ of habeas corpus before this Court. See ECF No. 1. In it, he raised statutory and constitutional challenges against his ongoing detention and his impending removal to El Salvador. See id. Petitioner was previously granted deferral of removal to that country. See ECF No. 6-1. Accordingly, the Court ordered Mr. Lyons, Mr. Mattos, and Ms. Noem (collectively, "the Government") to indicate whether he was going to be deported there. See ECF No. 4. In response, the Government clarified that Petitioner would not be removed to El Salvador. See ECF No. 6. Instead, Immigration and Customs Enforcement ("ICE") informed Petitioner that he would be removed to Mexico: an undesignated third country. See ECF No. 18.

On September 17, 2025, the Court ordered the Government to release Mr. Candido Bolanos because his detention violated the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq*. See ECF No. 19. At the same time, the Court ordered the Government to indicate what, if any,

procedures were being afforded to Petitioner so that he may challenge his removal to Mexico. See ECF No. 20.

On September 19, 2025, the Government advised the Court that Petitioner was referred to United States Citizenship and Immigration Services ("USCIS") for a third country screening. See ECF No. 22. USCIS determined that he was ineligible for fear-based relief from removal to Mexico. See ECF No. 32 at 5. Accordingly, the Government made plans to deport Petitioner on or after September 27, 2025. See ECF No. 24 at ¶ 4.

On September 25, 2025, Petitioner submitted a motion to reopen his removal proceedings to the Executive Office of Immigration Review ("EOIR"). See ECF No. 28. Simultaneously, Petitioner filed an emergency motion for a temporary restraining order and a preliminary injunction before this Court. See ECF No. 25. In it, he asks the Court to stay his removal until EOIR issues a decision on his request to reopen removal proceedings. See id.

That same day, the Court issued a temporary restraining order to maintain the status quo while it considered Petitioner's request for a preliminary injunction. See ECF No. 26 [hereinafter, "TRO Order"]. Accordingly, the Court enjoined the Government from removing him from the United States District of Nevada until October 9, 2025. See id. Petitioner's motion for a preliminary injunction is identical to his request for a temporary restraining order, and both forms of injunctive relief are subject to the same standard in the Ninth Circuit. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Accordingly, the Court incorporates the facts, standards, and reasoning from the TRO Order here by reference.

## II.  LEGAL STANDARD

Generally, a party seeking injunctive relief must show: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without the injunction; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. See Winter v. Nat. Res. Defense Council, 555 U.S. 7, 20 (2008). The Ninth Circuit recognizes a "sliding scale" variant of the Winter standard, where a strong showing of one factor can offset a weaker showing of another factor. See All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

Accordingly, a court may grant a preliminary injunction in favor of a party who shows that: (1) there are "serious questions going to the merits;" (2) the balance of hardships tips sharply in their favor; and (3) the last two Winter factors are met. See Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

### III.  DISCUSSION

Based on these factors, the Court concludes that Petitioner is entitled to a preliminary injunction staying his removal until EOIR adjudicates his motion to reopen removal proceedings.

**A. Serious Questions Going to the Merits**

Previously, the Court found that there are serious questions going to the merits of Petitioner's procedural due process claim. See TRO Order at 2–3. In its response, the Government does not engage with the substance of the Court's analysis pursuant to Mathews v. Eldridge, 424 U.S. 319 (1976). Instead, the Government argues that Petitioner has already been afforded all the process he is due because he has *filed* motions before the Executive Office of Immigration Review. The Court cannot agree.

As a preliminary matter, the Government acknowledges that it must provide Petitioner with "notice and an opportunity to reopen his case for full adjudication of his claim of [deferral] of removal from [Mexico]." Sadychov v. Holder, 565 Fed.Appx. 648, 651 (9th Cir. 2014) (unpublished disposition); see also Su Hwa She v. Holder, 629 F.3d 958, 965 (9th Cir. 2010), superseded by statute on other grounds as stated in Ming Dai v. Sessions, 884 F.3d 858, 867 (9th Cir. 2018). Nonetheless, the Government maintains that it has satisfied these requirements because Petitioner has "exercised his right to seek reopening, and his motions are under review." ECF No. 33 at 7.

The Court finds that, in this case, merely having an opportunity to file a motion is not enough to satisfy the Constitution's guarantee of due process. At this point, Petitioner has merely attempted to reopen his removal proceedings. EOIR has not reviewed his motions, much less

- 3 -

denied them. This Court cannot possibly conclude that he has been afforded a meaningful opportunity to reopen his case. See Su Hwa She, 629 F.3d at 963 ("Due process and this court's precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument.") (citations omitted). If it did, the procedural safeguards recognized by the Ninth Circuit in this specific context would be absolutely meaningless. The Government could simply deport noncitizens to newly designated third countries before they have a meaningful opportunity to reopen their cases—and thereby seek the full adjudication of their fear-based claims. In doing so, the Government would also—coincidentally—moot their motions to reopen removal proceedings. See 8 C.F.R. § 1003.23(b) (2025) ("Any departure from the United States, including the deportation or removal of a person . . . occurring after the filing of a motion to reopen . . . shall constitute a withdrawal of such motion."). But the Fifth Amendment's Due Process Clause is not an illusory promise of process. See Marbury v. Madison, 5 U.S. 137, 163 (1803) ("[W]here there is a [ ] right, there is also a [ ] remedy.") (citation omitted). This Court declines to reduce it into one by endorsing the Government's hollow interpretation of Petitioner's due process rights.

Instead, the Court continues to find that there are serious questions going to the merits of Petitioner's procedural due process claim. See TRO Order at 2–3. First, Petitioner has a longstanding, statutory right to avoid being removed to a country where he is likely to be tortured or killed. See 8 U.S.C. § 1231(b)(3); Trinidad y Garcia v. Thomas, 683 F.3d 952, 956 (9th Cir. 2012). Second, review by an immigration judge would address the risk of an erroneous deportation which violates this right. See Orozco-Lopez v. Garland, 11 F.4th 764, 722 (9th Cir. 2021) (citation omitted); Alvarado-Herrera v. Garland, 993 F.3d 1187, 1195 (9th Cir. 2021). After all, a "full and fair hearing" before "an impartial adjudicator" is a basic requirement of due process in the context of deportation proceedings. See Torres-Aguilar v. I.N.S., 246 F.3d 1267, 1270 (9th Cir. 2001). Third, the Government has failed to show that it would be substantially burdened by this additional process. This is unsurprising, as USCIS routinely refers its negative-fear determinations to EOIR in parallel contexts. See, e.g., 8 C.F.R. § 208.31(g) (2025).

### B. Irreparable Injury

Similarly, the Court finds that Petitioner is still likely to suffer irreparable injury without injunctive relief. Fundamentally, the Government argues that Petitioner cannot demonstrate irreparable harm because he has been afforded adequate procedural safeguards such that his removal would not deprive him of any rights. But this Court has already concluded that Petitioner is, at minimum, entitled to a meaningful opportunity to reopen his removal proceedings. See supra Part III.A. Furthermore, the Court must still decide whether Petitioner is constitutionally entitled to an additional hearing before an immigration judge, regardless of EOIR's ultimate decision on his motion to reopen. Cf. Nguyen v. Scott, No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) ("[Due process] cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held."); Aden v. Nielsen, 409 F.Supp.3d 998, 1101 (W.D. Wash. 2019) (same). In the absence of injunctive relief, Petitioner would not be able to vindicate his actual and potential due process rights. This is sufficient to satisfy the irreparable injury requirement. See Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012).

In any case, the Government does not dispute that Petitioner would be separated from his family and potentially tortured—if not killed—upon being removed to Mexico. These separate indicia of irreparable harm also support an award of injunctive relief at this juncture. See Leiva-Perez v. Holder, 640 F.3d 962, 969–70 (9th Cir. 2011).

### C. Balance of Hardships

Furthermore, the Court continues to find that the balance of hardships tips sharply in Petitioner's favor. Initially, the Government argues that a preliminary injunction would harm it by: (i.) interfering with the orderly, efficient administration of U.S. immigration law and (ii.) curtailing the discretion of the Attorney General. The Court is not convinced that a short-term pause of Petitioner's deportation—for the exceedingly limited purpose of facilitating EOIR review—would have either of these effects.

First, a preliminary injunction which grants EOIR sufficient time to review Petitioner's motion would promote, not undermine, the administration of U.S. immigration law. It is

undisputed that Petitioner has properly filed a motion to reopen his removal proceedings to fully adjudicate his claim for deferral of removal to Mexico. See ECF No. 28. By allowing the Government to deport him before an immigration judge even considers it, this Court could very well be sanctioning an erroneous deportation that violates 8 U.S.C. § 1231(b)(3)(A). Of course, the Court fully appreciates the Government's interest in efficiently effectuating this country's laws. But needless haste would create a likelihood of constitutional error, and this case's history counsels caution. In the past few weeks, this Court has already found that the Government was poised to violate its own grant of deferral of removal by deporting Petitioner to El Salvador. See ECF No. 11. Furthermore, the Court also found that the Government unlawfully detained Petitioner for nearly 2 months. See ECF No. 19. In short, short-term injunctive relief that allows all Parties to confirm whether Petitioner should be deported to Mexico is more than appropriate in this case. See Kucana v. Holder, 558 U.S. 233, 242 (2010) ("The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings.") (citations omitted).

   Second, the Court is not restraining the Attorney General's discretion by allowing an arm of the Department of Justice to review Petitioner's motion. The Court is well aware of the Executive Branch's broad authority over the deportation of noncitizens. See Zadvydas v. Davis, 533 U.S. 678, 700 (2001). To that end, the Court has not, and will not, express any opinion on the merits of Petitioner's claim for fear-based relief, as it presents issues that are beyond this Court's jurisdiction. See generally 8 U.S.C. § 1252. Instead, the Court is simply ensuring that the Government's own decisions comply with the requirements of our Constitution. Cf. Trump v. J.G.G., 604 U.S. 670, 672 (2025) (clarifying that noncitizens can raise due process challenges to deportation proceedings under statutes that otherwise preclude judicial review); see also Ibarra-Perez v. U.S., No. 24-631, 2025 WL 2461663, at *8 (9th Cir. Aug. 27, 2025) ("[Petitioner] does not challenge ICE's discretionary authority about 'when' to remove him or 'whether' to remove him. Rather, [he] objects to ICE's separate decision about 'where' to send him. Specifically, he objects to the lack of process afforded [to] him in connection with having been sent to a country not designated in the IJ's removal order . . . .").

In short, the Court finds that a short-term preliminary injunction would not inflict significant harm on the Government. Meanwhile, the absence of injunctive relief would likely inflict irreparable injury on Petitioner. See supra Part III.B. Accordingly, the balance of hardships tips sharply in Petitioner's favor.

### D. The Public Interest

Finally, the Court finds that the public interest still weighs in favor of staying Petitioner's removal until EOIR adjudicates his motion to reopen removal proceedings. As the Court previously explained, preventing the wrongful deportation of noncitizens is in the public interest—particularly when they are being removed to dangerous conditions. See TRO Order at 4; see also Nken v. Holder, 556 U.S. 418, 436 (2009).

In response, the Government argues that Petitioner has failed to establish a likelihood of success on his procedural due process claim; therefore, the public's interest in protecting constitutional rights is irrelevant here. But this Court has already concluded that there are serious questions going to the merits of this claim. See supra Part III.A. Therefore, the Court finds that this factor also weighs in favor of injunctive relief. See Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (citations omitted).

### IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** Petitioner's Motion for Preliminary Injunction (ECF No. 25) is **GRANTED**. The Government is **ENJOINED** from removing Petitioner from the U.S. District of Nevada until EOIR renders a decision on his motion to reopen removal proceedings. At that time, Petitioner must be afforded 14 days to seek further relief from this Court before the Government may effectuate his removal. Until then, the Court need not reach the merits of Petitioner's procedural due process claim, as it may very well be mooted.

**DATED:** October 8, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**